1    Arasto Farsad, Esq. (SBN 273118)
     Nancy Weng, Esq. (SBN 251215)
2    **FARSAD LAW OFFICE, P.C.**
     1625 The Alameda, Suite 525
3    San Jose, CA 95126
     Tel: (408) 641–9966
4    Fax: (408) 866–7334
     Email Addresses: farsadlaw1@gmail.com
5    nancy@farsadlaw.com

6

7

8

## UNITED STATES BANKRUPTCY COURT

9

## NORTHERN DISTRICT OF CALIFORNIA

10

## SAN JOSE DIVISION

11

12   In re:                               Case No. 23-50023 MEH
                                          Chapter 13
13   Y. ROGER YU,                         **OPPOSITION TO MOTION FOR**
                                          **RELIEF FROM STAY; CERTIFICATE**
14                                        **OF SERVICE**

15                                        Date: February 16, 2023
                                          Time: 2:30 p.m.
16           Debtor.                      Place: Either in person at 280 S. 1st St.,
                                          Courtroom 11, San Jose, CA 95113 **OR** by
17                                        Tele / Video Conference

18
                                          **Judge: Honorable M. Elaine Hammond**
19

20

21

22        **TO THE HONORABLE JUDGE M. ELAINE HAMMOND, THE UNITED**

23   **STATES TRUSTEE'S OFFICE FOR THE NORTHERN DISTRICT OF CALIFORNIA,**

24   **THE CHAPTER 13 TRUSTEE, THE MOVANT, ALL OTHER PARTIES IN INTEREST,**

     **AND THEIR RESPECTIVE COUNSEL(S) OF RECORD:** Now comes the Debtor herein, Y.
25
     Roger Yu, by and through his counsel of record, Farsad Law Office, P.C., and hereby submits
26
     the instant Opposition to Douglas Sykes' Motion for Relief from the Automatic Stay.  This
27
     Opposition is supported by the Declarations of Ben Yu and Y. Roger Yu and attached herein.
28

OPPOSITION TO MOTION FOR RELIEF FROM                              Case No. 23-50023 MEH
STAY; CERTIFICATE OF SERVICE

## I. **INTRODUCTION**

The Debtor, Y. Roger Yu, heavily invested in Crypto currency during its rise in 2020. The Debtor took out second mortgages and further leveraged his bets with large loans from other investors in order to buy / trade Crypto. His profits were up significantly and it all seemed to be going very well. However, by the first half of 2022, the Debtor lost everything. The Debtor is now clinically depressed. He is still working but is suffering from serious depression and panic attacks.

The Movant, Douglas Sykes ("Movant"), is an aggressive, hard money lender. The Debtor has four mortgages / notes with the Movant. In particular, Movant moved to foreclose upon one property, 115 College Avenue, Mountain View, CA 94040 ("Property") as the secondary lienholder. For the note on the Property, the Debtor made timely payments from its inception in December 2020 to March 2022. The Movant claims in his Motion for Relief that no payments were ever made. This is incorrect.

The note matured on December 1, 2022, and the Movant started foreclosure proceedings by recording an official notice of default ("NOD") in June of 2022. A foreclosure sale was then initially set in October, 2022. The Debtor has been trying since that time to reorganize and deal with the debt owed, but NEVER hired bankruptcy counsel to assist him--until now. Debtor does now acknowledge this was a mistake. After a few hours with the Debtor, current counsel believes that a Chapter 11 would allow the Debtor to do what he has been trying to do since the initial foreclosure sale in October.

A summary of the events that have transpired to date, as well as the argument(s) against relief from stay being granted now, are as follows:

## II. **RELEVANT FACTS / BACKGROUND**

1. This is the Debtor's first bankruptcy case. This case was initially filed in Pro Per on January 11, 2023 and the instant counsel substituted into the case on January 24, 2023.

2. The Debtor is the 50% owner of Property. The other 50% of the Property is owned by Ben Yu, the Debtor's relative.

3. The Debtor is the borrower on three other properties but not on the titles. Those properties are: 1047 Cherry St., San Carlos, CA 94070 ("Cherry"); 36500 Alder Ct., Fremont, CA 94536 ("Alder"); and 37591 3rd St., Fremont, CA 94536 ("3rd St.").[1]

4. **In 2017**, the Debtor transferred title to these properties to separate trusts whereby the Debtor is not the settlor or the beneficiary of the trusts.

5. Movant holds a second deed of trust on the Property. (A true and correct copy of the Deed of Trust and Promissory note are attached as **Exhibit A**.)

6. Movant also holds a second deed of trust on the Cherry, Alder and 3rd St. properties. All of the loans from Movant were taken out around the same time and all of the money resulting from those loans was lost in the same manner.

7. As to the Property, the current liens and arrears are as follows:

    a. Shellpoint - Mortgage Principal owed: $464,161.00 with $58,621.97 in arrears;

    b. Douglas Sykes - $285,000 principal borrowed at 8.5% interest (exact amount owed is in dispute).

8. The Debtor made timely, monthly payments of $2,018.75 to Movant as called for under the note every month from December 2021 to March 2022. (A true and correct copy of the Douglas Sykes's Demand dated May 20, 2022 is attached herein as **Exhibit B**.)

9. However, Movant is attempting to foreclose for the wrong amount owed. (A true and correct copy of the Notice of Default is attached as **Exhibit C**.)

    a. **Two State Court Lawsuits (all in Pro Per) Re: the Property.**

        i. <u>Ben Yu's Initial State Court Lawsuit.</u>

10. As stated above, the Debtor went into a deep depression after losing all of his own and his investors' monies. This money included the Movant's loans. When the Property was hit with the Notice of Trustee's Sale ("NTS") in October of 2022, Ben Yu, Debtor's relative, who lived (and still lives with him at the Property), proceeded to file a lawsuit to

---

1. All of these properties are being dealt with in their own Chapter 13 cases. The subject case is only dealing with the Property -- 115 College Avenue in Mountain View.

OPPOSITION TO MOTION FOR RELIEF FROM STAY; CERTIFICATE OF SERVICE

3

Case No. 22-50907 MEH

stop the foreclosure / attempted foreclosure of the Property. Ben Yu was 50% owner and so he had standing to do so.

11. This case is identified as **S**anta Clara Superior Court Case number 22CV404291 and is titled Ben Yu v. Entra Default Solutions, LLC. (Entra being the foreclosure trustee.) It was filed on October 10, 2022. (A true and correct copy of the First Amended Complaint is attached as **Exhibit D**.)

12. Ben Yu's Complaint alleged that:

      A. he had never received the NOD as a co-owner;

      B. the foreclosure trustee Entra Default Solutions, LLC was not a party to the subject deed of trust; that he did not know who they were and, therefore, they should not be able to foreclose;

      C. Ben Yu did not borrow any money from the Movant and therefore the foreclosure should be stopped; and

      D. Ben Yu sued the foreclosure trustee (Entra Default Solutions, LLC) and not the right party who was actually foreclosing on the Property-i.e., Douglas Sykes**.** Clearly, without counsel to advise him, these legal arguments failed miserably.

13. Ben Yu, continuing the case in Pro Per, sought a temporary restraining order to stop the foreclosure. That TRO was denied based on a lack of proof of service and adherence to local Ex Parte rules.

    a.   <u>The Debtor's State Court Lawsuit.</u>

14. Ben Yu, after not being successful at his State Court Lawsuit plus his failed bankruptcies which will be discussed below, and not being able to stop the foreclosure of his home / the Property, pleaded with the Debtor to help him. Ben Yu begged the Debtor to take proactive steps and help stop the foreclosure and save their home -- since Ben Yu had very little knowledge of the loan and the events surrounding it.

15. The Debtor finally got involved and filed his first state court lawsuit (after Ben Yu's failed state court lawsuit AND bankruptcies) on January 10, 2023 under case number 23CV409727, in Santa Clara Superior Court, in Pro Per. The complaint alleged violations of California Civil Code section 1671 and Unfair Business Practices centered

on the charging of a very high default interest rate at 13.5%. This time, the correct defendant, Movant Douglas Sykes was sued. Once again, without legal counsel, the TRO to stop the foreclosure in this case was denied based on the lack of service and adherence to local Ex Parte rules. (A true and correct copy of the State Court Ex Parte Application for Temporary Restraining Order and underlying Complaint, Order Denying attached herein as **Exhibit E**.)

    **b. The Bankruptcy Cases.**

16. Having failed miserably at his short-lived state court endeavors, on October 26, 2022, Ben Yu filed skeletal, Chapter 13 bankruptcy under case number 22-50976 SLJ in Pro Per in order to stave off the foreclosure of the Property. Ben Yu never filed bankruptcy before this case and no surprise, the case was automatically dismissed two weeks later on November 10, 2022 for a failure to file documents / schedules.

17. On December 9, 2022, Ben Yu filed a second bankruptcy case under case number 22-51110 MEH. This case was also in Pro Per and a skeletal petition. In this case, Ben Yu further filed an Ex Parte Motion to Extend Time to File Case Opening Documents on December 23, 2023 (Dkt. No. 14) as well as an Ex Parte Motion to Extend the Automatic Stay on January 21, 2023 (Dkt No. 21) citing that he was then aware of the court deadlines and that he was trying to find an attorney to help him proceed with the case. The Movant opposed the extension and asserted that there had not been the necessary 'substantial change in circumstances' to warrant the requested extension of stay.

18. The Court agreed with the Movant primarily because of the Pro Per usual deficiencies in the forms and procedures and further found that there was no 'change in circumstances' (at least nothing argued or documented) to warrant a finding to extend the stay. (A true and correct copy of the Order Denying Motion to Extend the Automatic Stay is attached herein as **Exhibit G**.)[2]

19. On January 11, 2023, with the foreclosure sale looming and without any protection, the Debtor desperately sought protection to prevent foreclosure of his home. Due to the denial of Motion to Extend the Automatic Stay in Ben Yu's case, which led to no current protection from foreclosure, the Debtor filed the instant bankruptcy in Pro Per (his first

---

[2] Ben Yu retained counsel one day before the hearing on the Motion to Extend Stay.

Case: 23-50029   Doc# 41   Filed: 02/15/23   Entered: 02/15/23 13:16:47   Page 5 of 49

case) and immediately sought legal counsel to help formulate a real 'Plan' to resolve the disputed debt with Movant and generally reorganize all of other debts.

20. Upon review of the instant case, Debtor's counsel (as discussed infra) believes a viable and feasible prospective plan / proposal is possible. Debtor's counsel asks that the Court to consider allowing the case to proceed to realize such a possibility; to allow the Debtor a "fresh start" under a confirmed Chapter 11 Plan. A motion to convert to Chapter 11 is being filed concurrently herewith this Opposition.

21. With regards to the Motion for Relief -- the Debtor's arguments against granting said relief at this time are as follows:

## III.    DISCUSSION

   a.    Cause Does Not Exist to Warrant Relief from the Automatic Stay under 362(d)(1) and 362(d)(2)

22. Under 11 U.S.C. 362(d), a Court can terminate the stay in a bankruptcy case if it finds 'cause', under 362(d)(2), whether there is equity in the property or the property is necessary towards an effective reorganization. **This statute is worded in the conjunctive; both (A) and (B) have to be satisfied before relief from stay may be accorded under this subsection.**

23. Regarding equity, the Debtor believes that the Property, because it is in very poor condition, is worth at most $400,000. The Movant, in its Motion, has valued the property at $925,000. The Debtor has a first lien with a balance of approximately $500,000.00. Hence, the Debtor agrees and concedes that the Property has **<u>virtually no equity</u>**.

24. Once the Movant substantiates that the Debtor has no equity in the property, the burden shifts to the debtor to establish that the property is "necessary to an effective reorganization" and that there is "a reasonable possibility of a successful reorganization within a reasonable time." <u>United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd</u>., <u>484 U.S. 365, 376</u> (1988). The Debtor must show "not merely that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect."

25. The Property is the Debtor's residence and where he conducts his business as an IT consultant. The Debtor's estate needs the Property so the Debtor can continue living and working under shelter (and in Mountain View / where his business has been and where all of his contacts are) so he can fund a soon to be proposed plan of reorganization. Although red-tagged and on a very small lot, the location is ideal for his business in IT.

26. With regards to the Property, the framework for the Debtor's prospective plan of reorganization is outlined as follows:

**Debtor to Strip Off Lien.**

| Class | Name of Creditor | Collateral | Amount Due |
|---|---|---|---|
| 1A | Douglas Sykes (Junior Lienholder) | 115 College Ave., Mountain View, CA 94040 | $313,655.00 – exact amount disputed |

Prior to confirmation, Debtor will obtain an order(s) or stipulation(s) fixing the secured amount of the above creditors' claims at zero. Debtor will pay nothing to those creditors as secured claims. Any claim of a creditor whose lien is stripped is a general unsecured claim treated in Part 2. Creditors in these classes shall retain their interest in the collateral consistent with the Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

**Debtor to Adjust Terms and Pay Amount Due in Full Over Time.**

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|---|---|---|---|---|---|---|
| 1B | Shellpoint Mortgage Servicing (Primary Mortgage) | 115 College Ave., Mountain View, CA 94040 | $464,161.00 | 3.00% | $2,491.72 | 30 years |

Debtor will pay the entire amount contractually due with interest through 360 equal monthly payments, due the 15th day of the month, starting Effective Date on the above secured claims. Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

**Class 2. General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| Douglas Sykes | $313,655.00 | Y – as to amount only | $31,365.50 | $522.76 |
| James Lee | $691,379.00 | N | $69,137.90 | $1,152.30 |
| Justin Lin | $850,773.00 | N | $85,077.30 | $1,417.95 |
| Taylor Chen | $978,653.00 | N | $97,865.30 | $1,631.08 |
| Wei Wang | $588,671.00 | N | $58,867.10 | $981.12 |
| Total | $3,423,131.00 | N | $342,313.10 | $5,705.22 |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Pot Plan.** Creditors will receive a pro-rata share of a fund totaling $342,313.10, created by Debtor's payment of $5,705.22 per month for a period of 60 months, starting Effective Date. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class.

As indicated above in the sample chapter 11 plan claimant treatment boxes, the Debtor intends to file a Motion to Value the Movant's lien as being wholly unsecured. Although a dispute as to value is anticipated, the Debtor is in the middle of completing a formal appraisal and believes that the value will not be an issue once the appraisal report is reviewed by Movant / Movant's counsel. Once it is determined that the Movant's lien is wholly unsecured, the Debtor will place Movant in Class 2 and offer him as well as the other large unsecured class creditors 10% of their claims over 60 months. Further, with regard to the first mortgage on the Property, Debtor's counsel has already begun negotiations with Shellpoint for a new mortgage agreement. An agreement to a Stipulation to Chapter 11 Plan / Claim Treatment seems likely.

Regarding the debt on the other properties, the Alder, 3rd, and Cherry properties will be handled through two other respective bankruptcies and one state court case filed by the people on

title – Harry Yu (as to the 3rd St. property under case no. 22-41324)[3] and Brian Yu (as to the Alder St. property under case no. 22-41315)[4] and Yolanda Jin (San Mateo Case No. 23CIV00088)[5].

As stated above, the Debtor and his counsel do not believe that the necessary 'cause exists' to grant relief from stay exists.

### c. In Rem Relief Should not be Granted Because There is No Bad Faith.

The Movant seeks relief under Bankruptcy Code § 362(d)(4), alleging that the Debtor and Ben Yu filed the prior bankruptcy petitions (two by Ben Yu) and the two lawsuits as a scheme to hinder, delay, or defraud creditors-especially the Movant. However, the Movant cites no evidence of anything other than some Pro Per property owners trying to navigate the legal system on their own. All they have proved is that skeletal bankruptcy petitions were filed. The Movant fails to prove that neither the Debtor nor Ben Yu filed these bankruptcy petitions and the state court lawsuits as a scheme to hinder, delay or defraud creditors. If the Movant considered the circumstances surrounding each filing in detail, they would realize that the Debtor and Ben Yu didn't know what to do / panicked. The prior filings failed to gain traction not from maliciousness but pure inexperience and lack of proven legal counsel. Also, as discussed infra, "in rem" relief is very serious and should only be granted in cases of clear abuse of the bankruptcy process. When a court grants relief from the automatic stay pursuant to 11 U.S.C § 362(d)(4), it gives creditors in rem relief from the automatic stay such that the order is binding in any bankruptcy case filed in the next two years purporting to affect the same real property.[6]

Specifically, § 362(d)(4) states as follows:

> (d) on request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of This section, such as by terminating, annulling, modifying, or

---

[3] Farsad Law Office, P.C. is not the attorney for the Debtor in this case.
[4] Farsad Law Office, P.C. is not the attorney for the Debtor in this case.
[5] The Movant discusses Yolanda Jin's 2 bankruptcies and 1 state court case in depth, but those discussions should not be relevant to the subject / sole Property that the Movant is seeking relief from stay to foreclose on here.

[6] *See*, 11 U.S.C. § 362(d)(4).

OPPOSITION TO MOTION FOR RELIEF FROM STAY; CERTIFICATE OF SERVICE

9

Case No. 22-50907 MEH

Conditioning such stay--
(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

(a) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
(b) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable state laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a Debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.[7]

To qualify for relief from the automatic stay under § 362(d)(4), the Movant must show that the Debtor engaged in a scheme to delay and hinder its creditors. Under fraudulent transfer law, "hinder" and "delay" have the same meaning.[8] To delay and hinder a creditor is to forestall its efforts in collecting on its debt unlawfully.[9] Such cases involve clear and definitive schemes where the Debtor has engaged in activity such as: "property dumping"[10], trust transferring,[11] and filing willfully fraudulent skeletal petitions.[12] These examples are truly schemes to hinder, delay or defraud creditors. The law was designed to prevent such types of dishonest and

---

[7] *See*, 11 U.S.C. § 362(d)(4).
[8] *See*, e.g., *In re Braus*, 248 F. 55, 64 (2d Cir.1917).
[9] *Id*.
[10] "Property dumping" involves schemes where the debtor does not list the property on his or her schedules in the bankruptcy case. (See, *In re Dorsey* (Bankr. C.D. Cal. 2012) 476 B.R. 261, 266).
[11] "Trust transfers" is where the ownership interests in the Subject Property were transferred without its consent…The quitclaim deed stated that the transfer was from A S Trust to itself and the Debtor and that the transfer was for "No Consideration." (See, *In re Dorsey* (Bankr. C.D. Cal. 2012) 476 B.R. 261, 269).
[12] Debtor's serial filing of skeletal Chapter 13 petitions, coupled with failure to appear at creditor's meeting and failure to make payments to Chapter 13 trustee, supported conclusion that debtor's conduct was "willful," and that debtor's case should be dismissed "with prejudice" so as to prohibit debtor's filing of any bankruptcy case for period of 180 days. (Bankr.Code, 11 U.S.C.A. §§ 105(a), 109(g).; *In re Armwood* (Bankr. N.D. Ga. 1994) 175 B.R. 779).

fraudulent debtors from filing and deceiving creditors. As stated above, and from the facts in the Court's own records, this is not the case with our current Debtor, Y. Roger Yu. Unlike cases where debtors have illegally transferred their property, dumped their property into someone else's case filing via a fractional interest, or engaged in other illegal acts to delay their creditors, the Debtor in this case has not engaged in any misconduct. The title transfers all occurred in 2017 prior to obtaining these loans from Movant. The lawsuits (although sloppy / misdirected) were filed in good faith by the Debtor and his co-owner in desperate attempts to try to stop the sale of the Property while trying to figure out what to do.

Now, with the assistance of competent bankruptcy counsel, the Debtor can work on a plan of reorganization that complies with the Bankruptcy Code. The Debtor merely asks for the opportunity to try to complete a case with counsel.

## **CONCLUSION**

For all of the foregoing reasons, the Debtor respectfully requests that the Court deny the Movant's Motion for Relief from Stay.

DATED: February 14, 2023

Respectfully submitted,

FARSAD LAW OFFICE, P.C.

By: _/s/ Nancy Weng_
Nancy Weng, Esq.
Attorneys for Debtor

**CERTIFICATE OF SERVICE**

I am NOT a party to the within action; my business address is FARSAD LAW OFFICE, P.C., 1625 The Alameda, Suite 525, San Jose, CA 95126. On **February 14, 2023**, I served the interested parties with the document(s) described as follows:

**1.  OPPOSITION TO MOTION FOR RELIEF FROM STAY; CERTIFICATE OF SERVICE,**

**BY USPS FIRST CLASS MAIL:** By placing a TRUE COPY thereof enclosed in a sealed envelope with postage fully pre-paid addressed to all addressees listed below and on the attached **Court Creditor Matrix.** The envelope was deposited in the United States Post Office in San Jose, California.

**BY ELECTRONIC TRANSMISSION:** I also caused to be served the above-described documents by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the following parties and/or counsel who are registered ECF users: *__All CM/ECF registered participants.__*

Executed on **February 14, 2023** at **San Jose**, California.

I declare under penalty of perjury that the above statements are true and accurate.

*/s/ Arasto Farsad*
Arasto Farsad

Label Matrix for local noticing
0971-5
Case 23-50023
California Northern Bankruptcy Court
San Jose
Wed Feb 15 07:08:41 PST 2023

CA Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

CA Franchise Tax Board
Attn: Special Procedures
P.O. Box 2952
Sacramento, CA 95812-2952

Devin Derham-Burk
P.O. Box 50013
San Jose, CA 95150-0013

Douglas Sykes
c/o Scheer Law Group, LLP
155 North Redwood Dr #100
San Rafael, CA 94903-1966

Arasto Farsad
Farsad Law Office, P.C.
1625 The Alameda, Suite 525
San Jose, CA 95126-2224

Franchise Tax Board
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

James Lee
P.O. Box 20224
Seattle, WA 98102-1224

Justin Lin
1053 E. Meadow Circle
Palo Alto, CA 94303

MCLP Asset Company, Inc. c/o
NewRez LLC dba Shellpoint Mortgage Servi
PO Box 10826
Greenville SC 29603-0826

Newrez LLC
1100 Virginia Dr Suite 125
Fort Washington, PA 19034-3235

Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004

(p)PNC BANK RETAIL LENDING
P O BOX 94982
CLEVELAND OH 44101-4982

Shellpoint
PO Box 10826
Greenville, SC 29603-0826

(p)CALIFORNIA STATE BOARD OF EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

Taylor Chen
1525 MIramonte Ave., #3082
Los Altos, CA 94024-9001

(p)U S  ATTORNEY'S OFFICE  NORTHERN DISTRICT
450 GOLDEN GATE AVENUE
9TH FLOOR
SAN FRANCISCO CA 94102-3419

Wei Wang
No. 3388 Zhoujiazui Rd., Bldg. 8
Shanghai, China

Reilly Wilkinson
Scheer Law Group
155 N Redwood Dr. #100
San Rafael, CA 94903-1966

Y. Roger Yu
115 College Ave
Mountain View, CA 94040-1512

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

PNC Bank
P.O. Box 1820
Dayton, OH 45401

State Board of Equalization
Attn: Special Procedures Section, MIC:55
P.O. Box 942879
Sacramento, CA 94279

U.S. Attorney
Civil Division
450 Golden Gate Ave.
San Francisco, CA 94102-3400

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Douglas G. Sykes

End of Label Matrix
Mailable recipients    20
Bypassed recipients     1
Total                  21

Case: 23-50023   Doc# 41   Filed: 02/15/23   Entered: 02/15/23 13:16:47   Page 14 of 49

EXHIBIT A

Recording Requested BY
Fidelity National Title
FSBO-T02000 2418
RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

DOUGLAS G. SYKES
275 ALVARADO ROAD
BERKELEY, CA 94705-1512
Loan Number: CMC19544

Property Address:
115 COLLEGE AVENUE
MOUNTAIN VIEW, CA  94040
APN # 148-38-109
**COUNTY: <u>SANTA CLARA</u>**

**This document was electronically submitted
to Santa Clara County for recording**

**24724552**

**Regina Alcomendras**
Santa Clara County - Clerk-Recorder
11/25/2020 09:38 AM

Titles: 2      Pages: 15
Fees: $242.00
Tax:  $0.00
Total:  $242.00

SPACE ABOVE THIS LINE FOR RECORDERS USE

The primary person responsible for the origination of this loan is LEON GLUCK  CALDRE #00405994 employed by COMMERCIAL MORTGAGE CORPORATION  CALDRE #00832164.

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

**DEFINITIONS:**

Words used in multiple sections of this document are defined below and other words are defined throughout this document. Certain rules regarding the usage of words used in this document are also provided in Section 14.

**(A) "Security Instrument"** means this Deed of Trust and Assignment of Rents, which is dated November 16, 2020, together with all Riders to this document.  This Security Instrument may also be referred to as the "Deed of Trust".

**(B) "Borrower"** is YINTAO YU, TRUSTEE OF THE 115 COLLEGE AVENUE TRUST, DATED JULY 28, 2017. Borrower is the trustor under this Security Instrument. Borrower's mailing address is: 2990 RALSTON AVENUE, BELMONT, CA  94002.

**(C) "Lender"** is DOUGLAS G. SYKES. Lender is the beneficiary under this Security Instrument. The term Lender shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Lender herein.

**(D) "Trustee"** is FIDELITY NATIONAL TITLE COMPANY, to whom Borrower irrevocably grants, transfers and assigns property, in Trust, with Power of Sale.

**(E) "Note"** means the promissory note signed by Borrower and dated November 16, 2020.  The Note states that Borrower owes Lender Two hundred Eighty-Five thousand dollars (U.S. $285,000.00) plus interest plus all other amounts that may become due under the Note and this Security Instrument.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges, late charges, and all other charges due under the Note, all sums due under this Security Instrument, plus interest and other charges. Loan also includes all other documents executed by Borrower conjunction with the Note and this Security Instrument. While there may be sums due under this Security Instrument that are not part of the Loan, such sums are secured by this Security Instrument and may be collected pursuant to the rights granted to Lender herein.

**(H) "Riders"** means all riders to this Security Instrument that are required by Lender and are executed by Borrower. The following riders are to be executed by Borrower:  **NONE**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

Page 1 of 14

**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** mean those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Periodic Payment"** means the regularly scheduled amount due for: (1) principal and interest under the Note; plus (2) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan".

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**(Q) "Loan Servicer"** means the entity that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of SANTA CLARA, which currently has the address of 115 COLLEGE AVENUE, MOUNTAIN VIEW, CA 94040 and fully described as:

## SEE LEGAL DESCRIPTION ATTACHED – EXHIBIT "A"

### APN # 148-38-109

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges, late charges, and all other charges due under the Note and the payment of any obligations due under Borrower's Security Instrument(s). Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of

the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.  Additionally, Lender can require payment due to senior encumbrances, including property taxes, insurance, and Homeowner's Association ("HOA") dues, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender or Lender's Servicing Agent, in accordance with the notice provisions in Section 13. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds, at Lender's sole discretion, or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid with full force and effect. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section, all payments accepted and applied by Lender shall be applied in the following order of priority: each payment shall be credited first on impounds (Escrow Items in Section 3) then due, then interest due, then on late charges, then on interest on advances, then on advances, then on default interest, then on advance fees and other fees and charges incurred, and the remainder on principal.  However, should advances be made due to a default under this Deed of Trust, Lender has sole discretion as to the distribution as to how payments shall be applied when received.  All Periodic Payments shall be applied in the order in which a payment first became due unless a written forbearance agreement or loan modification agreement is in effect.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied the full payment of one or more Periodic Payments, such excess may be applied to any late charges due, in Lender's sole discretion. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.**  Should Lender require, Borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum to provide for payment of amounts due ("Escrow Funds") for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5.  These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Escrow Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver shall only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under this Security Instrument and pay such amount and Borrower shall then be obligated under this Security Instrument to repay to Lender all such amounts. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 13 and subject to any legal requirements, and, upon such revocation, Borrower shall pay to Lender all Escrow Funds, and in such amounts, that are then required under this Section.

Lender may, at any time, collect and hold Funds in an amount: (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA; and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Escrow Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Escrow Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Escrow Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Escrow Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Escrow Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Escrow Funds, Lender shall not be required to pay Borrower any interest or earnings on the Escrow Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Escrow Funds. Lender shall give to Borrower, without charge, an annual accounting of the Escrow Funds as required by RESPA.

If there is a surplus of Escrow Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Escrow Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Escrow Funds held by Lender.

**4. Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust including borrower's covenants to make payments when due. Additionally, Borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

**All Property Assessed Clean Energy assessment/liens ("PACE") (or similar type program) are prohibited. In the event that a PACE assessment/lien becomes a lien on the Property and becomes a part of the payment of property taxes or becomes senior to this Security Instrument in any way, Borrower shall be in breach of the Note and this Security Instrument and Lender has the right to take all acts set forth in Security Instrument and to accelerate this Loan. The loan shall be in default and Lender may proceed with a foreclosure or any other legal remedy as specified in this Security Instrument. This supersedes any and all conflicting language regarding taxes, liens and assessments in this Security Instrument.**

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 calendar days of the date on which that notice is given (excluding Deed of Trust liens, which need no notice), Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section. Failure to do so by Borrower, may result in Lender accelerating the Note under Section 8.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a one-time charge for flood zone determination, certification and tracking services; or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time re-mappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate or Default Rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies,

shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Prior to close of escrow, and upon renewal and/or change of insurance carrier, Borrower to provide and deliver evidence of insurance to Lender, which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss to the insurance carrier if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2. Lender or Lender's agent has the right to order inspections to review the repairs and restoration of the Property. The cost for those inspections shall be paid from the insurance proceeds unless paid directly by Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 calendar days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender: (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument; and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Whether or not the Lender/Beneficiary has required a particular insurance product, as an example but not limited to earthquake or flood, the Lender/Beneficiary shall be entitled to any insurance proceeds without limitation.

**Any cost of acquiring evidence of insurance from current insurance producer, shall be a cost of the Borrower. It will be treated as an advance and charged interest thereon from date cost is paid by Lender and/or Lender's agent to date advance is repaid to Lender by Borrower. Advancing fee applies. Additionally, should Borrower not supply evidence of insurance sufficient for Lender's requirement and an insurance binder must be place by the Lender and/or Lender's agent, the binder fee shall be charged to the Borrower in addition to the cost of Lender placed insurance.**

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this Security Instrument.

**Should this Loan fall into default for any reason or fall under any other city, county and/or state ordinance notification and/or correction situation (i.e. vacant property), Borrower agrees to pay all ordinance and/or registration fees to the city/county**

Case: 23-50023   Doc# 41   Filed: 02/15/23   Entered: 02/15/23 13:16:47   Page 20 of 49

and/or state, and corrective fees and charges when due, and those advanced by Lender. In addition, should inspections be required, Borrower understands that they are responsible for payment of all fees for said inspections. The inspections could be monthly, depending on the requirements of the city, county, and/or state, or depending upon the requirements of Lender.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, fraudulent, misleading, misrepresentation, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence, or funds being used for a business purpose.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If: (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations); or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (1) paying any sums secured by a lien which has priority over this Security Instrument; (2) appearing in court; and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section, Lender does not have to do so and is not under any duty or obligation to do so. The parties hereto agree that Lender incurs no liability for not taking any or all actions authorized under this Section.

If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Code of the United States, Lender, at Lender's option, may take such action, including but not limited to seeking relief from stay to complete foreclosure of the Property under the Bankruptcy Code. Lender may disburse such sums, including reasonable attorneys' fees, as Lender deems necessary, in Lender's sole and absolute discretion, to protect Lender's interest. All such disbursed sums shall be added to the obligation of Borrower and shall be secured by this Security Instrument.

Additionally, a Bankruptcy Administration Fee will be charged for each bankruptcy filed by Borrower and/or each bankruptcy that affects the Property in an amount of $250.00 for each case filed.

Any amounts disbursed by Lender under this Section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate or Default Rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the

following fraction: the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 calendar days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 18) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection, and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is judicially interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might

have arising out of such overcharge.

**13. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's mailing address set forth in the definitions if sent by other means, including e-mail. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the mailing address set forth in the definitions unless Borrower has designated a substitute notice address that is provided to Lender.

**Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address that is provided to Borrower.**

Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at the mailing address set forth above, unless Borrower has designated another address that is provided to Lender.

**14. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (2) words in the singular shall mean and include the plural and vice versa; and (3) the word "may" gives sole discretion without any obligation to take any action.

**15. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument. Borrower acknowledges receipt of same.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

**In the event of sale or transfer, conveyance or alienation of the Property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and twenty-five percent (25%) or more of that entity that is Borrower is sold or transferred), Lender shall have the right of acceleration, at its option, to declare the Note secured by the Deed of Trust, immediately due and payable, irrespective of the maturity date expressed therein, and without demand or notice. No waiver of this right shall be effective unless it is in writing. Consent by Lender to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions. The acceptance of funds from any party other than Borrower does not constitute acceptance of any transfer of the Property and acceleration under this clause may still occur and/or continue.**

**17. Borrower's Right to Reinstate after Acceleration.** If Borrower meets certain conditions, Borrower may have the right to reinstate the Note after acceleration by Lender prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument.

Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender

may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. **However, this right to reinstate shall not apply in the case of acceleration under Section 16.**

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change of Loan Servicer. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information required in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**19. Secret Profit.** Under the law, it is unlawful for a Loan Servicer to make "secret profit". Should a Loan Servicer be involved with the servicing of the Loan, a Loan Servicer may not earn interest on the funds in a trust account unless it is to the benefit of the actual owner of the funds. This paragraph is to put Borrower on notice that although interest is not paid to the Loan Servicer, there may be a lower cost basis given by the bank utilized by the Loan Servicer for the monthly analysis performed on the trust account(s). Said lower cost may be reflective of the balances in the accounts. Additionally, when there is a returned check fee being charged, the entire amount is not a "bank charge". Included in the cost of the returned check" which is delineated in the Promissory Note, Loan Servicer shall retain the difference between the "Note" charge and the actual charge by the bank as an additional work charge. In addition, should a tax service be ordered, the Loan Servicer may retain the difference between the actual cost of the service and the amount charged to the you, the Borrower. This difference is the cost for the Loan Servicer to prepare the request for service.

**20. Hazardous Substances.** As used in this Section: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property: (1) that is in violation of any Environmental Law; (2) which creates an Environmental Condition; or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of: (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of the Note and/or this Security Instrument, and/or any other of the Loan documents, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Lender or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee, Agent of Lender or Agent of Trustee shall cause to be filed for record. Trustee, Agent of Lender or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale

having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell the Property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as Trustee or Lender may determine at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, or Trustee's Agent may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Borrower, Trustee or Lender as herein defined, may purchase at such sale.

If the Property consists of several lots, parcels or items of property, Lender may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold; or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender deems is in its best interest. Any person, including Borrower, Trustee or Lender, may purchase at any sale hereunder, and Lender shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Lender desire that more than one sale or other disposition of the Property be conducted, Lender may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Property not sold until all indebtedness secured hereby has been fully paid. In the event Lender elects to dispose of the Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Lender, their agents and legal counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee. Trustor hereby waives any and all rights expressed or implied under California Civil Code § 2924g(b).

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with the sale, Trustee shall apply the proceeds of sale to payment of: (a) all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; and then (b) all other sums then secured thereby, and the remainder, if any, to the person or persons legally entitled thereto.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey this Deed of Trust and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey this Deed of Trust without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Deed of Trust if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

If Borrower pledges more than one parcel of real property as security for the Note, Lender may agree, in its sole discretion, to agree to release a portion of the Property pledged under this Security Instrument for a sum certain that is paid.

If Borrower seeks a partial reconveyance of one of the properties, Lender shall be entitled to charge a fee of $100.00 for the work necessitated for preparation of the partial reconveyance and said fee shall be presumed to be reasonable. The remaining property described in this Deed of Trust shall continue to be held by said Trustee under the terms thereof. As provided in said Deed of Trust, this Partial Reconveyance is made without affecting the personal liability of any person for payment of the indebtedness secured by said Deed of Trust.

**23. Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 13) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action, if a corrective action is available under the Applicable Law. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to this document and the notice of acceleration given to Borrower pursuant to this document shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

Case: 23-50023   Doc# 41   Filed: 02/15/23   Entered: 02/15/23 13:16:47   Page 25 of 49

**25. Multiple Lender Loans:** Pursuant to California Civil Code § 2941.9, if this Deed of Trust has more than one Lender with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow. Additionally, pursuant to California Business & Professions Code § 10238(i), the holders of more than 50% of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with California Civil Code § 2941.9 in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**26. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the Beneficiary statement and/or Payoff demand statement as provided by California Civil Code § 2943.

**27. Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 calendar days of the date of request. Said information can include, but is not limited to: name, address, and phone number of senior lien holder, balance due, payment amount, next due date, loan number, amounts advanced, and access codes to on-line systems of senior lienholder that would provide information to Lender about the senior lien.

**28. Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against all costs, expenses (including, without limitation attorney fees, consulting fees and court costs), claims, demands, lawsuits, judgments, awards, or actions arising out of or related to the Property or the Loan.

**29. Indemnification.** Borrower hereby agrees to indemnify, defend (with counsel of Lender's and/or Broker's choice) (as to any fees and costs are incurred or accrued) and hold Lender and Broker and their officers, agents, and representatives harmless from and against any costs, expenses (including, without limitation attorneys' fees, consulting fees and court costs), claims, demands, lawsuits, judgments, awards, or actions arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and/or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

**30. Acceptance by Lender of Partial Payment after Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. Any foreclosure action that is pending or has been commenced shall continue and will be with full force and effect.

**31. Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in order to discharge that portion thereof which is unsecured by this Deed of Trust.

**32. Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives: (i) the benefit of all present or future laws providing for any appraisal before sale of any portion of the Property; (ii) all rights of redemption, valuation, appraisal, stay of execution, notice of election to mature or declare due the whole of the indebtedness and marshalling in the event of foreclosure of the lien created by this Security Instrument; (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties; (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Security Instrument or to any action brought to enforce the Note or any other obligation secured by this Security Instrument; and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code §§ 2899 and 3433.

**33. 125% Title Insurance Policy.** Borrower agrees to allow Lender to obtain a title policy in an amount exceeding the face amount of the Loan by 25% and instruct insuring title company of same. Lender and Borrower acknowledge this increase of coverage is not for the allowance of negative amortization of the principal balance of the Note. This additional coverage is to pay for losses the Lender may incur in a case which could increase the amount above the original principal balance coverage. Said losses could include

unpaid or delinquent interest, late charges, attorneys' fees, advances for insurance, taxes, etc. Borrower agrees this increase of coverage results in a higher title insurance fee for which Borrower shall pay.

**34. Severability; Entire Agreement; Amendments.** The parties intend that the provisions of this Security Instrument and all other Loan Documents, including the Note evidencing the indebtedness secured hereby, shall be legally severable. If any term or provision of this Security Instrument or any other Loan Document, including the Note evidencing the indebtedness secured hereby, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Security Instrument or of such other Loan Document, including the aforesaid Note, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by Applicable Law. This Security Instrument and the aforesaid Note contain the entire agreement between the parties as to the rights granted and the obligations assumed in this Security Instrument. This Security Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

### 35. Assignment of Rents, Revenues and Profits

(a) All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the  Property now existing or hereafter entered into, all of the rents, royalties, issues, profits (including crops), revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under the Deed of Trust.

Prior to the occurrence of any Event of Default; Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default.  It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under the Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof.  Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof.

Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon.  Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due.  Whenever requested by Lender, Borrower shall furnish to Lender a certificate of Borrower setting forth the names of all lessees under all leases, the terms of their respective leases, the space occupied, the rents payable thereunder, the security deposit paid, and the dates through which any and all rents have been paid.  Whenever requested by Lender, Borrower shall furnish a copy of all current leases to Lender.

**Violation of Governmental Requirements.**  If Borrower suspects any tenant or other occupant of the Property is using the Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation.

The failure of Borrower, any tenant, or any other occupant of the Property to comply with any Governmental Requirements in accordance with the lease section above and any potential violation by a tenant or other occupant of the Property of any Governmental Requirement is an Event of Default.

(b) **Application by Borrower of Rents and Profits.**  Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

(c) **Attornment.**  Each lease for any part of the Property shall make provision for the attornment of the lessee thereunder to any person succeeding to the interest of Borrower as the result of any foreclosure or transfer in lieu of foreclosure hereunder.

**36. Security Agreement.** This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a) any and all items of personal property that are part of the Property which, under Applicable Law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all hotel furnishings, building materials, petroleum products including gasoline, gas station food and beverages, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with the Property, including, without limitation, any and all personal property necessary for the operation and maintenance of any business located on the Property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of Borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b) any and all items of property that are part of the Property which, under Applicable Law, constitute fixtures and may be subject to a security interest under California Uniform Commercial Code §§ 9334 and/or 9604. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property", and in all additions thereto, substitutions therefor and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times. Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to the Personal Property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under the California Uniform Commercial Code, including, § 9604 thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this paragraph, Borrower may from time to time replace items of Personal Property and fixtures constituting a part of the Property, provided that:

(1) the replacements for such items of Personal Property or fixtures are of equivalent value and quality;

(2) Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3) at the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of California Commercial Code §§ 9334 and/or 9604.

**37. Occupancy of Borrower.** If this loan has been arranged as a non-owner occupied loan, Borrower shall not move into property without written permission by Lender. Should Borrower move into subject property without approval from Lender, this shall be deemed a default under the terms of the loan.

**38. Use of Loan Funds.** Lender has loaned funds according to the what Borrower has stated as funds are to be used. Should Lender discover that funds were not used for the exact reason given in the loan/underwriting documents, this shall be deemed a default under the terms of the loan.

**39. Periodic Reports on the Status of any Business involved with regard to the making of this loan.** If this loan has been made as a "Business Purpose Loan", Lender may request from Borrower an update as to the status of the business with which the funds

were to be used.  Borrower will have 30 calendar days to give a written status to Lender from date Lender has requested said status. Lender to delineate what information is required as evidence of the status.  Should Borrower not produce the written status within the given time period, this shall be deemed a default under the terms of the Loan.

**40. Uncashed Checks.**  Should Lender or their agent issue a check to the borrower and it remains uncashed for more than 60 calendar days, a $5.00 monthly fee from date of issue may be charged should borrower request a reissue on the check.   Should Borrower request the check to be reissued, in addition to the fee just stated, a stop payment and re-issue fee in the amount of $25.00 may be incurred and deducted from the funds.

**41. Agency of Loan Servicer.**  The Loan Servicer or Lender under this Note may or may not have a proprietary program for forbearances, extensions or modifications.  You would be advised during the course of the servicing of the loan.  However, if the Loan Servicer inquires whether the Borrower would like, or should the Borrower request, an extension of the loan, forbearance, modification, etc., the Loan Servicer remains the sole agent of the Lender and is not the agent of the Borrower.

**42. The Agreement is Binding.**  This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns.

**43. Usury.**  This Loan is exempt from usury as it has been made or arranged by a Licensed California Real Estate Broker.

**44. Property Tax Verification.**  Lender may require Borrower to pay a one-time charge for a real estate tax service and/or reporting service used by Lender in connection with this Loan.  This tax service may be ordered on each Assessor's Parcel Number secured by this loan.  In addition to the fee to be paid to the service, the Loan Servicer may charge a fee to prepare the documentation to order the service.  Fees shall be paid by the Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

BORROWERS:

_____                                  11/22/2020
**YINTAO YU, TRUSTEE OF THE 115 COLLEGE AVENUE TRUST, DATED JULY 28, 2017**  / Date

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California}
County of _____ **San Mateo** _____ }

On ____ **NOV 2 2 2020** ____ before me, ____ **Loraine Anne Robbins** ____, NOTARY PUBLIC, personally appeared ____ **YINTAO YU** ____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> LORAINE ANNE ROBBINS
> Notary Public - California
> San Mateo County
> Commission # 2274060
> My Comm. Expires Jan 29, 2023

# EXHIBIT "A"
## Legal Description

**For APN/Parcel ID(s):  148-38-109**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF MOUNTAIN VIEW, COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 31 IN BLOCK 6 OF UNIVERSITY PARK IN THE CITY OF MOUNTAIN VIEW, COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, AS SHOWN ON MAP FILED BOOK M, PAGE 9 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXHIBIT B

| | 5.20.22 | DEMAND ROGER YU 115 COLLEGE AVENUE | | | |
|---|---|---|---|---|---|
| | | 285,000 | 8.50% | | |
| | | | | | |
| Principal Balance: | | | | 285000 | |
| Late Charges: | [17x201.88] | | | 3431.96 | |
| Demand Fee: | | | | 30 | |
| April/May Unpaid Installments: | | [2018.75X2] | | 4037.5 | |
| Other: | | | None | | |
| Other: | | | None | 0 | |
| Amount Due [plus accruing interest below] | | | | 292499.5 | |
| | | | | | |
| Plus interest of: | | $67.29 | per day | | |
| 5.1.22 | to receipt of funds/COE. | | | | |

Douglas Sykes    [doug1625@gmail.com]

275 Alvarado Road    510-333-7998

Berkeley, CA 94705

**Wiring Information:**

Bank of America:    Douglas G. Sykes

Account Number 002174174025

Routing Number for Wire: 026009593

Douglas G. Sykes    5.20.22

EXHIBIT C

**\*\*This document was electronically submitted to Santa Clara County for recording\*\***

**25317513**

**Regina Alcomendras**
Santa Clara County - Clerk-Recorder
06/09/2022 12:41 PM

Titles: 1      Pages: 3
Fees: $108.00
Tax:  $0
Total:  $108.00

RECORDING REQUESTED BY:

*and*

WHEN RECORDED MAIL TO:
**Entra Default Solutions, LLC**
**1355 Willow Way, Suite 115**
**Concord, California 94520**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 148-38-109
T.S. No: 2022-05452
Title No: 91223547

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**[PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]**

## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$297,052.94** as of **6/8/2022**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**DOUGLAS G SYKES**
**275 ALVARADO ROAD**
**BERKELEY, CA 94705**
**Phone: 510 333-7998**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

# Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That Entra Default Solutions, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 11/16/2020, executed by YINTAO YU, TRUSTEE OF THE 115 COLLEGE AVENUE TRUST, DATED JULY 28, 2017, as Trustor, to secure certain obligations in favor of DOUGLAS G. SYKES, as beneficiary, recorded 11/25/2020, as Instrument No. 24724552, in Book , Page , of Official Records in the Office of the Recorder of Santa Clara County, California describing land therein as: As more fully described on said Deed of Trust.

including One Note FOR THE ORIGINAL sum of $285,000.00 , that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

The balance of principal and interest which became due on 4/1/2022, along with late charges, foreclosure fees and costs any legal fees or advances that have become due.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The California Declaration of Compliance required under Civil Code section 2923.5 (b) or, if applicable, 2923.55 (c), is attached hereto and incorporated herein by reference.**

Dated: 6/8/2022

ENTRA DEFAULT SOLUTIONS, LLC

By: _____
Marisa Vidrine, Foreclosure Specialist

# Declaration of Mortgage Servicer Pursuant to

# Civil Code §2923.5(b)

Borrower(s):      YINTAO YU
Mortgage Servicer:  DOUGLAS G SYKES

Property Address:  115 COLLEGE AVENUE
                      MOUNTAIN VIEW, CA 94040
T.S. No.:           2022-05452

The undersigned, as an authorized agent or employee of the mortgage servicer named below declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to Cal. Civil Code §2923.5 (a)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ Despite the exercise of due diligence pursuant to Cal. Civil Code §2923.5(e), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of §2920.5.

4. ☒ The requirements of Cal. Civil Code §2923.5 do not apply because the borrower, mortgage/deed of trust or real property does not meet the criteria described in Cal. Civil Code §2924.15(a).

5. With respect to Cal. Civil Code §3273.10:

    ☐ The mortgage servicer received a request for a forbearance in connection with COVID-19 from the borrower, and such request was denied. A copy of the written notice is attached, AND forbearance ☐ was or ☐ was not subsequently provided.

I certify that this declaration is accurate, complete, and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate that borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: ____6|3|22____   _____ Mortgage Servicer
                                 By:

EXHIBIT D

Ben Yu
115 College Ave,
Mountain View, CA 94040
Email: mtvbenyu@gmail.com
Plaintiff in Pro Per



FILED
OCT 25 2022
Clerk of the Court
Superior Court of CA County of Santa Clara
BY Y. CHAVEZ DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SANTA CLARA

Ben Yu, individually and as Trustee of the 115 College Avenue Trust, dated July 28, 2017,

                              Plaintiffs,

v.

Entra Default Solutions, LLC, a California Corporation; and DOES 1 through 10, Inclusive,

                              Defendants.

Case No: 22CV404291

**First Amended Complaint**

Comes now Plaintiff Ben Yu ("Plaintiff"), who complains and alleges as follows:

### PARTIES

(1) Plaintiff Ben Yu ("Plaintiff"), is and at all times relevant hereto was an individual and trustee of the 115 College Avenue Trust, dated July 28, 2017 who has an ownership interest in an owner-occupied residential real property located at 115 College Ave, Mountain View, CA 94040 (the "Property").

(2) Plaintiff is informed and believes and thereupon alleges that Entra Default Solutions LLC, is a California corporation conducting business within this judicial district, and claiming an interest in the Property.

(3) The true names and capacities of defendants named herein as DOES 1 through 10 are unknown to Plaintiff at this time, who therefore sues said defendants by such fictitious

names.

(4) Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such fictitiously-named defendants when they have been ascertained. Plaintiff is informed and believe and thereupon allege that such defendants are liable for the injuries to Plaintiff hereinafter alleged.

(5) Plaintiff is informed and believes and thereupon alleges that the defendants named as DOES 1 through 10 are individuals and/or unknown entities that reside and/or conduct business within this judicial district, and claiming an interest in the Property.

(6) Plaintiff is informed and believes and thereupon alleges that the defendants named as DOES 1 through 10 are responsible in some manner for the occurrences hereinafter alleged, and that Plaintiff' s damages were proximately caused by these defendants.

(7) At all relevant times to this action, the defendants, and each of them, acted in concert with, and/or was the agent, partner, affiliate, joint venturer, co-conspirator, aider and abettor, servant, associate, representative, predecessor-in-interest and/or successor-in—interest of the other.

<u>JURISDICTION AND VENUE</u>

(8) This is an action for injunctive and declaratory relief, and damages against Entra Default Solutions LLC for wrongful foreclosure and for violation of the Homeowners Bill Of Rights ("HBOR").

(9) This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

(10) This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State Of California, and a substantial portion of the acts, omissions, events, and

transactions constituting the causes of action alleged herein occurred Within the State of California. California Code of Civil Procedure § 410.10.

(11). This Court is the appropriate venue for this action under California Code of Civil Procedure sections 395 and 395.5, because the acts that give rise to the causes of action alleged herein occurred in the County of Santa Clara, State of California. Plaintiff hereby designates the County of Santa Clara, State Of California, as the place of proper venue.

GENERAL ALLEGATIONS

On or around September 15, 2022, Plaintiff found a "Notice of Trustee's Sale" (Exhibit A) posted by Defendant on the door of the Property that Plaintiff owns. The "Notice of Trustee's Sale" from Defendant claimed that Plaintiff is in default under a deed of trust dated 11/25/2020 and Plaintiff's Property will be sold at a public auction on "10/12/2022 at 10:00AM", at "the Gated North Market Street entrance of the Superior Courthouse, 191 N. First Street, San Jose, CA 95113".

However, Plaintiff has never received any "Notice of Default" before, and had no knowledge of the "Deed of Trust dated 11/25/2020". Upon checking the "Deed of Trust dated 11/25/2020", that "Deed of Trust dated 11/25/2020" was not signed by Plaintiff. Plaintiff did not know the claimed "lender" in the "Deed of Trust", and also Plaintiff has never borrowed any money from the claimed "lender" in the "Deed of Trust".

Defendant is acting in concert to deprive Plaintiff of his civil rights by attempting to take Plaintiff's Property without due process of law.

PRAYER

WHEREFORE, Plaintiff prays for relief as follows:

1. General damages in an amount to be proven at trial;

2. Special damages in an amount to be proven at trial;

3. For an order enjoining defendants from taking any action to sell the Property;

4. For pre and post judgment interest;

5. For punitive damages;

6. For costs of suit; and,

7. For such other and further relief as the Court may deem just and proper.


Respectfully submitted,
Dated: October 24, 2022

*Ben Yu*

Ben Yu, Plaintiff in Pro Per

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

I have read the foregoing **VERIFIED FIRST AMENDED COMPLAINT** and know its
contents.

I am a party to this action. The matters stated in the foregoing document are true of my
own knowledge except as to those matters which are stated on information and belief, and as to
those matters, I believe them to be true.

Executed On <u>October 24, 2022</u> at Mountain View, California
I declare under penalty of perjury under the laws of the State Of California that the
foregoing is true and correct.

_Ben Yu_

Ben Yu

EXHIBIT E

Y. Roger Yu
115 College Ave, Mountain View, CA 94040
yrogeryumountainview@gmail.com
Plaintiff in Pro Per

SCANNED

F I L E D
JAN 1 0 2023
JAN -10 2023

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY
F. Tang-Miller

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**SANTA CLARA COUNTY**

Y. Roger Yu, trustee of The 115 College
Avenue Trust,

        Plaintiff,

        v.

Dougals Sykes, an individual, and Does
1-50, inclusive,

        Defendants.

Case No.:

**23CV409727**

**EX PARTE APPLICATION FOR A**
**TEMPORARY RESTRAINING ORDER TO**
**RESTRAIN THE TRUSTEE'S SALE**

TO THE COURT, DEFENDANTS, AND THEIR COUNSEL OF RECORD:

        NOTICE IS HEREBY GIVEN that Plaintiff, Y. ROGER YU, (hereinafter "Plaintiff")

hereby submits this Ex-Parte Application for a Temporary Restraining Order to restrain the

foreclosure sale of property located 115 College Ave, Mountain View, CA 94040 (the

"Property").

        Notice of this Ex-Parte Application was provided to all parties as described in the

Declaration of Y. Roger Yu, filed herewith. For the reasons set forth in this application, the

Memorandum of Points and Authorities, and the attached Declarations, good cause exists to

grant Plaintiff's Ex-Parte Application for a Temporary Restraining Order.

DATED: January 10, 2023               Respectfully submitted,

                                   *Y. Roger Yu*
                                   Y. ROGER YU
                                   In Pro Per

1

Case: 23-50023   Doc# 41   Filed: 02/15/23   Entered: 02/15/23 13:16:47   Page 44 of 49

EXHIBIT F



The following constitutes the order of the Court.
Signed: January 5, 2023

*M. Elaine Hammond*
_____
**M. Elaine Hammond
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

In re )   Case No. 22-51110 MEH
)
BEN YU, )   Chapter 13
)
)
)
Debtor. )
)
)

<u>ORDER DENYING EX PARTE MOTION TO EXTEND THE AUTOMATIC STAY</u>

On January 4, 2023, Debtor filed an *Ex Parte Motion to Extend the Automatic Stay* ("Motion") (Dkt. # 21).  Debtor's chapter 13 case was filed on December 9, 2022, and the automatic stay expires on January 8, 2023.

Debtor's request for an extension of the stay on an ex parte basis is not allowed.  As set forth in Bankruptcy Local Rule ("BLR") 4001-2[1], a motion to extend the stay should be served on 14 days' notice.  If a shorter time is needed, Debtor must file a motion for a hearing on shortened time.  *See* BLR 9006-1.

A request to shorten time should be accompanied by a declaration identifying the foreclosing creditor, the effort made to have such creditor agree to a hearing on shortened time, and any response received.

_____
[1] The Bankruptcy Local Rules are available on the court's website at:
https://www.canb.uscourts.gov/procedures/local-rules

1

Debtor's current request to extend stay fails to identify whether the stay is to be extended to all creditors or only specific creditors. Specific creditors must be identified by name. The request to shorten time and motion to extend stay must be served on all creditors to be stayed. Thus, Debtor's Motion is denied.

IT IS SO ORDERED.

**END OF ORDER**

COURT SERVICE LIST

<u>Via ECF:</u>

All ECF Recipients

<u>Via Mail:</u>

Ben Yu

115 College Ave

Mountain View, CA 94040

**UNITED STATES BANKRUPTCY COURT
for the Northern District of California**